IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES A. CORRIGAN, JR., and TIM J. BARRY, both individually and on behalf of all others similarly situated, and GARY ALSOBROOKS, </br></br>Plaintiffs,</br>v.</br></br>DOMESTIC LINEN SUPPLY CO., INC.,</br></br>Defendant. | No. 12 C 0575</br></br>Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

Plaintiffs James A. Corrigan Jr. and Tim J. Barry, individually and on behalf of similarly situated employees, brought a collective and putative class action complaint against defendant Domestic Linen Supply Co, alleging violations of the Fair Labor Standards Act "FLSA", 29 U.S.C. §201 et seq. (Count I), and violations of the Illinois Wage Payment and Collection Act "IWPCA", 820 ILCS 115/1 et seq., the Michigan Wage and Fringe Benefits Act "MWFBA", M.C.L. §408.471 et seq., and other state laws (Count II). Additionally, Plaintiff Gary Alsobrooks has filed an individual action against defendant, alleging breach of contract and fraud (Counts III & IV).[1] Defendant has moved to dismiss or in the alternative compel arbitration on all counts. Plaintiffs Corrigan and Barry oppose the motion. Alsobrooks has agreed to arbitrate his claims. For the reasons stated below, defendant's motion is granted.

---

[1] It appears that Alsobrooks has been improperly joined as a plaintiff. Fed. R. Civ. P. 20 allows persons to join as plaintiffs only if they assert a right to relief arising out of the same transaction, occurrence or series of transactions or occurrences, and any question of law or fact common to all will arise in the action. Because Alsobrooks' claims against defendant are wholly unrelated to Corrigan's and Barry's claims, he has been improperly joined, and should be severed. Because, however, he has agreed to arbitration, there is no need to sever his case at this time.

## FACTS

Defendant is a corporation, headquartered in Michigan, but also doing business in Illinois. Defendant is in the business of supplying uniforms, linens, and other materials to businesses.

Plaintiff Barry was hired as a Service Manager, sometime on or before November 20, 2003, and signed an agreement titled Employment/Trade Secrets Agreement (The Barry Agreement). The Barry Agreement governs use of company information, the employment relationship, and paycheck adjustments, and provides:

> "[A]ny controversy or claim arising out of or relating to this agreement or breach thereof (including any and all relief sought arising out of the termination of employment) shall be settled by arbitration in accordance with the commercial arbitration rules of the American Arbitration Association …."

Plaintiff Corrigan was hired as a Route Salesman/Driver, sometime on or before June 18, 2009, and signed a similar agreement titled Employment/Trade Secrets Agreement (The Corrigan Agreement). The arbitration clause in the Corrigan Agreement reads in pertinent part:

> "[A]ny controversy or claim arising out of or relating to this agreement or breach thereof (including any and all relief sought out of the employment relationship or the termination of employment) shall be settled by arbitration in accordance with the commercial or employment rules of the American Arbitration Association (as the nature of the claim dictates) …."

Plaintiffs allege that during "the last three years" they were required to work in excess of 40 hours per week, but were paid a salary based on a 40-hour workweek, and not compensated for hours worked in excess of 40 hours in violation of FLSA, IWPCA, and MWFBA.

## DISCUSSION

Defendant has moved to compel arbitration, arguing that each plaintiff entered into an employment agreement containing valid arbitration clauses. Courts review a motion to compel

arbitration under a summary judgment standard in accordance with Federal Rule of Civil Procedure 56(c). Tickanen v. Harris & Harris, Ltd., 461 F. Supp. 2d 863, 866 (E.D. Wis. 2006). Movants are required to "provide sufficient evidence in support of their claims such that a reasonable jury could return a verdict for them under applicable law." WFC Commodities Corp., v. Linnco Futures Group, Inc., 1998 WL 834374, *2 (N.D. Ill. 1998). The court may consider exhibits and affidavits regarding the arbitration agreement in question. Reineke v. Circuit City Stores, Inc., 2004 WL 442639, *1 (N.D. Ill. 2004).

Agreements containing arbitration clauses are no different than other agreements and must be upheld "save upon such grounds as exist in law or in equity for the revocation of any contract." 9 U.S.C. § 3. The Federal Arbitration Act (FAA) was passed to ensure that valid agreements to arbitrate would be enforced by courts. Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985). Upon finding a valid arbitration agreement, courts generally compel arbitration. Id. In accordance with the FAA courts are required to stay proceedings until arbitration is held "if the court determines there is an agreement in writing to submit to arbitration and the proceeding filed with the court is subject to arbitration under this agreement." Tickanen, 461 F. Supp. 2d at 866. "The court's only role when presented with a question of arbitrability is to determine, (1) whether a valid arbitration agreement exists and (2) whether the scope of the parties dispute falls within the agreement." Tickanen, 461 F. Supp. 2d at 866 (quoting Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000).

It is the job of the courts to interpret agreements and determine the validity of the contract in question. See Stolt-Nielsen S.A. v. AnimalFeeds Int't Corp., __ U.S. __, 130 S. Ct. 1758, 1774-75 (2010). Offer, acceptance, and consideration form the base of any valid contract.

See e.g. Steinberg v. Chicago Medical School, 69 Ill. 2d. 320, 329 (Ill. 1977).  In the instant case, there is no dispute that both plaintiffs willingly entered into their respective agreements in return for employment by defendant.  Therefore, offer, acceptance, and consideration all exist and, absent something to establish otherwise, the contracts are valid.

Further, when parties agree in a valid arbitration agreement that the AAA's rules apply, an arbitrator should decide the scope of arbitrability.  Bayer CropScience, Inc. v. Limagrain Genetics Corp., Inc., 2004 WL 2931284, *4 (N.D. Ill. 2004) ("The inclusion of the phrase 'the arbitration shall be conducted … in accordance with the prevailing commercial arbitration rules of the American Arbitration Association' in the arbitration provision of the Agreement is clear and unmistakable evidence that the issue of arbitrability is to be submitted to the arbitrator."); see also Yellow Cab Affiliation, Inc. v. N.H. Ins. Co., 2011 WL 307617, *4 (N.D. Ill. 2011) (affirming that when parties mention the commercial rules of the AAA, arbitrability is a decision for the arbitrator).  This is consistent with Rule 7 of the Commercial Rules of the AAA, which in pertinent part states:

> "R-7: The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement."  American Arbitration Association, Inc., *Commercial Arbitration Rules and Meditation Proceedings: Including Procedures for Large, Complex Commercial Disputes*, 2010.

In the instant case, the arbitration provisions each specifically provide that the disputes "shall be settled by arbitration in accordance with the commercial of the American Arbitration Association."  Therefore, whether plaintiff's claims fall within the scope of the arbitration provisions is to be decided by an arbitrator.

Recognizing this, plaintiffs present two reasons why the contracts should not be enforced. Neither is valid. First, plaintiffs argue that the Agreements are contracts of adhesion and any ambiguities must be construed against the defendant. Even if plaintiffs are correct that the contracts are adhesionary, courts routinely uphold contracts of adhesion, absent other considerations. Koveleskie v. SBC Capital Markets, Inc., 167 F.3d 361 (7th Cir. 1999); see also Northwestern Nat'l Ins. Co. v. Donovan, 916 F.2d 372, 377 (7th Cir. 1990); Quist v. Empire Funding Corp., 1999 WL 982953 (N.D. Ill. 1999). Disparities in bargaining power and take-it-or-leave-it provisions are not enough to invalidate an agreement. Koveleskie, 167 F.3d at 361. Generally, there must be a "degree of fraud or wrongdoing in order to have an agreement invalidated." Id.; see also Kinkel v. Cingular Wireless, LLC, 357 Ill. App. 3d 556, 563 (Ill. App. Ct. 2005). Courts have also found contracts of adhesion void when the terms are "hidden in a maze of fine print." Kinkel, 357 Ill. App. 3d. at 563 (quoting Frank's Maintenance & Engineering Inc. v. C.A. Roberts Co., 86 Ill. App. 3d 980, 990 (Ill. App. Ct. 1980)).

In the instant case, plaintiffs have not alleged fraud or wrongdoing, and the terms in the Agreements were clear and unambiguous. They were of the same font and typeface as the rest of the agreement. The only wrong plaintiffs have alleged is that the Agreements are form contracts, prepared entirely by defendant and offered on a take-it-or-leave-it basis. This is not enough to invalidate the Agreements. Oblix, Inc. v. Winiecki, 374 F.3d 488, 491 (7th Cir. 2004) ("'take-it-or-leave-it basis' arguments fare no better. Standard-form agreements are a fact of life"). Further, because there are no allegations of fraud, wrongdoing, or hidden terms there is no other reason to deem the Agreements invalid.

Next, plaintiffs argue that defendant should be equitably estopped from compelling arbitration because defendant did not compel arbitration in a similar case in California.[2] While there are many ways equitable estoppel may be invoked, the party invoking estoppel must generally have relied on a promise, representation, or conduct by the other party to their detriment. Smith v. City of Chicago Heights, 951 F.2d 834, 840-41 (7th Cir. 1992) ("[C]ourts should look for a showing of the plaintiff's actual and reasonable reliance on the defendant's conduct or representations.") (internal quotation marks omitted); Parks v. Kownacki, 193 Ill.2d 164, 180 (Ill. 2000). More specifically, the general test for invoking equitable estoppel is "whether in all the circumstances of the case conscience and [the] duty of honest dealing should deny one the right to repudiate the consequences of his representations or conduct." Ceres Illinois, Inc. v. Illinois Scrap Processing, 114 Ill.2d 133, 148 (1986).

In the instant case plaintiffs fail to allege any promise, representation or conduct directed towards them, or any detrimental reliance such that allowing defendant to compel arbitration would violate conscience or the duty of honest dealing. Plaintiffs cite Nationwide Mutual Ins. Co. v. Filos, 285 Ill. App. 3d. 528, (Ill. App. Ct. 1996), as support for their contention that defendant should be estopped from compelling arbitration. Plaintiffs contend this court should read Nationwide to establish that defendant cannot compel arbitration because defendant has "fostered the impression that the contractual condition will not be used as a legal defense." Nationwide is entirely distinguishable from the instant case, involving an insurance company that assumed defense of a suit on behalf of an insured party and then denied coverage at a later

---

[2]For some inexplicable reason, defendant devotes several pages of its reply brief to a discussion of judicial estoppel, a doctrine not mentioned by plaintiffs.

date. The case created primary insurance liability as an exception to the general rule that estoppel cannot create insurance coverage where none was present. A conflict of interest exists for an insurer that must defend a party and at the same time raise policy defenses to deny coverage to that party. In the instant case, defendant has represented only that they chose to settle instead of compel arbitration in an unrelated case. Further, the policy considerations are not present. The two cases arose at separate times and were independent from one another. The conflict of interest the Nationwide court relied on is not applicable to the instant case.

Additionally, plaintiffs ignore that Nationwide states, "in addition, the insured must establish the elements of estoppel: that he was misled by an act or statement of Nationwide, he reasonably relied on the conduct or representation, and he was prejudiced thereby." Nationwide Mut. Ins. Co., 285 Ill. App. 3d. at 536. Plaintiffs have not alleged how defendant misled them or how they relied on defendant's conduct or representation to their detriment. Plaintiffs fail to establish or even articulate any of the elements stated by the case they cite as support for their position. Thus, defendant is not equitably estopped from compelling arbitration.

The court now turns to the question of whether class arbitration may be compelled. Defendant argues that when an arbitration clause is silent as to class arbitration, individual arbitration must be compelled.

It is for courts, not arbitrators, to decide whether class claims are able to proceed. Goodale v. George S. May Intern. Co., 2011 WL 1337349, *2 (N.D. Ill. 2011) ("The Plaintiffs insist that the agreement's silence mandates that the Court allow the arbitrator to determine the arbitrability of the class claims. Supreme Court precedent, however, squarely forecloses the possibility that the class claims are arbitrable."). It is the job of the courts to interpret what

parties to a contract have agreed upon, and this includes whether the parties agreed to class arbitration. See Stolt-Nielsen S.A., 130 S. Ct at 1773. Thus, it is appropriate for the court to determine whether the parties have agreed to class arbitration.

A main goal of the FAA "is to ensure private agreements to arbitrate are enforced according to their terms." Stolt-Nielsen S. A., 130 S. Ct. at 1773 (internal quotation marks omitted) (quoting Volt Information Sciences Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 479 (1989)). Parties are "generally free to structure their arbitration agreements as they see fit." Id. at 1774 (quoting Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 57 (1995)). It is the job of courts to interpret the language of these agreements mindful of the intention of the parties. Id. at 1774-75 ("It falls to the courts and the arbitrators to give effect to these contractual limitations, and when doing so, courts and arbitrators must not lose sight of the purpose of the exercise: to give effect to the intent of the parties."). Courts should avoid compelling something unless there is a contractual basis for it. Id. at 1775. Thus, a court may not compel parties to arbitrate as part of a class when an arbitration agreement is silent regarding class arbitration. Id. at 1776.

In the instant case, both parties agree that the arbitration clause is silent as to class arbitration, but Plaintiffs argue that defendant reads Stolt-Nielsen too broadly. Plaintiffs are wrong. The Stolt-Nielsen court explicitly held, "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." Stolt-Nielsen S. A., 130 S. Ct. at 1775. In the instant case, there is no such basis for concluding that the parties agreed to class arbitration.

Finally, defendant incorrectly argues that the court should dismiss plaintiffs' suit. A district court should retain jurisdiction when a suit is referred to a separate forum for resolution of an issue. Tice v. American Airlines, 288 F.3d 313, 318 (7th Cir. 2002). Courts should await the outcome of arbitration before dismissing a suit to save the parties the burden of additional litigation in the event that the arbitrator does not resolve all of the issues of the parties. Id. Additionally, the power to compel arbitration comes from Section 3 of the FAA, which directs courts to stay proceedings that have been referred to arbitration until arbitration has been completed. 9 U.S.C. § 3; see also Continental Cas. Co. v. American Nat. Ins. Co., 417 F.3d 727, 732 (7th Cir. 2005). Thus, when a court compels arbitration the court should stay the proceeding. Because, however the plaintiffs are required to arbitrate individually, they cannot represent the class as required by Fed. R. Civ. P. 23(a). Accordingly, the court dismisses the class claims without prejudice.

## CONCLUSION

For the foregoing reasons, plaintiffs' class claims are dismissed without prejudice and defendant's motion to stay and compel arbitration is granted. This action is stayed until further order. The parties are directed to report to the court by filing a written report on or before October 23, 2012, and appearing for a status hearing October 30, 2012, at 9:00 a.m.

**ENTER:** July 20, 2012

**Robert W. Gettleman**
**United States District Judge**

9